(No. 25587.—

THE MT. OLIVE & STAUNTON COAL COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (JOSEPHINE TRETTER *et al.* Plaintiffs in Error.)

*Opinion filed October 11, 1940—Rehearing denied Dec. 4, 1940.*

C. C. DREMAN, for plaintiffs in error.

MACDONALD, MEYER & MEYER, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On December 14, 1938, Louis Tretter was crushed and killed between two cars on a side-track on the premises of the Mt. Olive & Staunton Coal Company, one of the respondents herein, near Staunton, Illinois. He left surviving him his widow, Josephine Tretter, and his dependent child, Oscar Tretter, who were the petitioners in this cause and are plaintiffs in error in this proceeding. On hearing before the arbitrator, there was a finding that the deceased's death did not arise out of his employment. The Industrial Commission reversed this finding and entered an award, which, *on certiorari*, the circuit court set aside for want of sufficient evidence, and this review is of that judgment on writ of error granted by this court.

There is no disputed question of fact in the record and we are, therefore, called upon to decide only as a matter of law whether the evidence in the record sustains the finding of the Industrial Commission.

For the claimants, Robert Rae testified that on the date in question he and the deceased were both working as sulphur pickers on tables up in the tipple and that there were about thirty-six of them so working on that date; that the company provided a shanty east of the tipple for the convenience of workmen in eating their lunch and that they had a half-hour between 11:00 and 11:30 for that purpose. He said that he and Tretter left the shanty together after lunch and separated, Tretter going toward the tracks west of the shanty and underneath the tipple, and that there were six of these tracks; that on the second track there were three cars, two under the tipple and one just east of there. The two under the tipple were coupled together and held there by brakes. The last this witness saw of Tretter he was between the bumpers of these disconnected cars. The witness did not see him killed. This witness described outdoor toilet facilities provided at the mine, mildly criticised

them, and testified that customarily the men went wherever they pleased to relieve themselves.

Joe Prelec, another sulphur picker, testified substantially to the same effect. He saw Tretter leave the lunch shanty, saw him pass the first track, but was looking the other way and did not see Tretter caught between the cars. The testimony of George Knaggs was to the same effect.

George Zimmerman, who was top-boss for the company, testified that the noon lunch-whistle on that day and every day blew at 11:00 o'clock; that when the whistle blows, the top-men come down the tipple steps and go east to the lunch shanty, which is steam heated, contains benches and in which there is drinking water furnished; that this shanty is thirty-two feet east from the stairs leading down from the tipple, with a clear path to it and no railroad tracks to cross; that the nearest tracks to it are twenty-six feet to the north, the second track forty feet and the others more remote. This witness further testified that empty cars were supplied to the mine by a train generally arriving by 11:00 o'clock. These cars were pushed onto a siding and were let down to the mine by gravity on a 1.2 per cent grade as needed. This witness testified that the lunch shanty had been changed at some previous time and the new one which was in use at the date of the accident was so located as to avoid the necessity for any top-man ever to cross the tracks and that the toilet was, for the same reason, located about one hundred and seventy feet in the same direction. It is apparent from a diagram in evidence that no workman from the top of the tipple would have to cross any track or pass between any cars in going to the lunch shanty or toilet. The toilet facilities provided by the company consisted of the usual outdoor facilities, except that the building was set over drains and was kept sanitary by exhaust steam and water from the engine room.

The plaintiffs in error argue first, that this space between the two cars could not have been a dangerous place be-

cause it was not shown that there was any rule of the company prohibiting the men from going there. It would require so little wit to recognize this place as one of danger that the argument is not worthy of notice. Their main argument is to the effect that the deceased went between the cars to relieve himself in the performance of an act of nature and that he was, therefore, in the course of his employment. The difficulty with this argument is that it is based entirely upon surmise and not supported by any evidence at all. As above noted, the toilet facilities were so located as to make it unnecessary for any workman to cross any railroad tracks. They would, in fact, be going away from instead of toward the tracks for that purpose. There is no evidence at all that the deceased was in the act of performing or about to perform any act of nature at the time he was killed, nor any scintilla of evidence as to why he was crossing between the uncoupled cars. In order to confirm an award it would be necessary to presume that the toilet facilities were not reasonably adequate and to presume that the deceased was between the cars for the purpose of performing an act of nature. An award cannot be based upon guess or surmise but must be founded upon facts and inferences reasonably drawn from facts proved by the evidence. (*St. Louis and O'Fallon Coal Co.* v. *Industrial Com.* 325 Ill. 574.) The employer is not an insurer, but is responsible only within the provisions of the Workmen's Compensation act. *White Star Motor Coach Lines* v. *Industrial Com.* 336 Ill. 117.

We approve the finding of the circuit court that there is not sufficient evidence in the record to support the finding and award of the Industrial Commission, and the judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*