RAMÓN ANTONIO VALENTÍN NADAL, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent.

No. CI-66-21. Decided June 6, 1967.

*Manuel de Jesús Mangual* for petitioner. Counsel for the Manager of the State Insurance Fund did not appear.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

According to the decision of the Industrial Commission in this case, petitioner Ramón Antonio Valentín Nadal testified that he worked for the Civil Defense at the National Guard Headquarters at stop 3 1/2 in San Juan; that upon returning to work after having lunch in a nearby restaurant he was injured in an accident in Muñoz Rivera Avenue; that he was traveling in a motor vehicle together with other fellow workers.

According to the drawing admitted in evidence, the vehicle went up to Muñoz Rivera Avenue along the street between the Weather Bureau and the National Guard building and at the end turned to the left. Petitioner testified further that they were coming by the middle lane and were going to take the left one to enter the National Guard building; that the driver lost control of the vehicle for which reason they collided with the pole in front of the wall of the National Guard; that the accident occurred at about 35 feet from the entrance gate to the premises of the employer.

There is no controversy as to these facts, except that petitioner indicates that (1) the automobile "upon colliding with the light pole came to rest upon the very sidewalk of the employer's building" and (2) the thoroughfare where the accident occurred "passes across or goes through a property which is on both sides of the road, that is, in front of the National Guard there are the laboratories and other grounds which also belong to the government." Petitioner has not expressed with due accuracy the location of the public avenue in the place where the accident took place. The truth is that it was not just one property on both sides of said avenue but two properties. One belongs to the state government and is occupied by the National Guard. The other one belongs to the federal government and is occupied by some laboratories of an agency of said government.

The Commission concluded that (1) when the accident occurred petitioner did not have any special mission of the employer nor had to accomplish anything for the latter's benefit and therefore he was not in the course of employment; (2) the accident occurred exclusively for lack of skill of the driver; and (3) the accident did not occur on the premises of the employer but on the public thoroughfare, therefore it is a question of a common and ordinary street risk in which there are no factors to warrant its being considered as an exception.

Feeling aggrieved, petitioner appealed to this Court and in support of his appeal he assigns that the Commission's decision is not supported by the evidence and that the Commission committed error "in deciding that it is a case not protected by the Workmen's Accident Compensation Act . . . in the absence of proof that the accident did not occur as a consequence of his employment nor was it due to a risk inherent thereto."

We conclude that petitioner's claim is not valid at law and therefore cannot prosper.

██ It is understood by the general rule, known as "going to and from work", that accidents sustained by a worker while going from his home to work and from work to his home are not compensable. *Atiles, Mgr.* v. *Industrial Commission*, 72 P.R.R. 390 (1951). But this rule has its exceptions. *Gallart, Mgr.* v. *Industrial Commission*, 87 P.R.R. 16 (1962). There was no evidence in this case to the effect that the nature of petitioner's work demanded his presence in the street thereby exposing him to "street risks" nor that, as in *Gallart, supra*, the employer, in providing him with transportation to his home, would do it in such a manner as to expose him to a particular risk not common to the general public.

In *Manager of the State Fund* v. *Industrial Commission*, 73 P.R.R. 14 (1952); *Atiles, Mgr.* v. *Industrial Commission*,

69 P.R.R. 887 (1949) and *Cordero, Mgr.* v. *Industrial Commission*, 61 P.R.R. 40 (1942), we affirmed the compensations granted to injured workers. In the first case the accident occurred while the worker returned to his work after lunch, "at the entrance door of the warehouse where he was working." In the second, the worker was injured upon returning from work along a piece of road within the premises of the employer and which was the only road for going to and coming from his employment. In the third, the worker was injured upon being hit by an automobile after said automobile had collided with another on public highway No. 52, between Toa Baja and Bayamón; at that moment the worker was waiting for the hour to start working and was with other workers "standing on the outside of the macadam and on a road of the Fonalleda's [the employer] plantation which leads to macadam Highway No. 52." Inasmuch as in the instant case the accident occurred in the public avenue at about 35 feet from the entrance gate to the employer's establishment, the rule we invoked in these two cases known as the rule "on premises of the employer", is not applicable to the case at bar.

 But in the majority of the jurisdictions the rule "on premises of the employer" has been extended to embrace the "rule of proximity" in order to render compensable the injuries sustained by a worker in an accident which occurred in the vicinity of the premises of the employer when the route to be taken is the only one available or a convenient one, which exposes the worker to special risks as for example, a railroad crossing. The situation must be such that the employee is exposed in the proximity of the business (1) to risks peculiarly associated with his employment and not to risks common to the neighborhood or (2) to risks to which the general public is not exposed or (3) to greater risks than those to which the general public is exposed, or (4) to situations which may be attributed to the employer such

as situating the parking lot for employees' vehicles across an avenue heavily traveled which had to be crossed for entering or leaving work, or the frequent use of a private parking lot, located at the opposite side of a heavily traveled highway, when that of the employer adjacent to the plant was full, situation known to the employer, or the lack of maintenance by the employer, in accordance with contract to that effect, of a sidewalk contiguous to his establishment on which the worker fell because it was covered with ice. *Kelty* v. *Travelers Insurance Company*, 391 S.W.2d 558 (Tex. App. 1965); *Bountiful Brick Co.* v. *Giles*, 276 U.S. 154 (1928); *Cudahy Co.* v. *Parramore*, 263 U.S. 418 (1923); *Sola* v. *Sunny Slope Farms*, 135 S.E.2d 321 (S.C. 1964); *McField* v. *Lincoln Hotel*, 182 N.E.2d 905 (Ill. App. 1962); *Montgomery* v. *State Industrial Accident Com'n*, 356 P.2d 524 (Ore. 1960); *Jaynes* v. *Potlatch Forests*, 271 P.2d 1016 (Idaho 1954); *Lewis* v. *Walter Scott & Co., Inc.*, 137 A.2d 109 (N.J. Cty. Ct. 1957); 1 Larson, Workmen's Compensation Law 195 *et seq.*, § 15.

The evidence shows that in this case there did not exist, at the scene of the accident, (1) a risk peculiarly associated with the employment nor (2) one to which the general public was not exposed nor (3) one greater than the one the general public is exposed to, nor was it established (4) that the accident was due to a situation attributable to the employer. The accident merely occurred because the driver in the proximity to the entrance of the employer's establishment did not drive his automobile with due skill or care.

In *Fenton* v. *Margate Bridge Co.*, 94 A.2d 848 (N.J. App. 1953) a situation very similar to the one in the instant case occurred. It concerned an employee of an enterprise which operated a bridge for the traffic of motor vehicles. He collected the toll imposed for using the road running over the bridge. The employee was injured upon losing

control of his automobile on a sharp turn in the highway near the bridge, and struck a pole on the boundary line of employer's property. The court concluded that the employee thus injured was not subject to a greater risk in the daily use of the highway than the general public, and therefore, his injuries did not arise out of nor in the course of the worker's employment. See also, *Verret* v. *Travelers Insurance Company*, 166 So.2d 292 (La. App. 1964); *Bronson* v. *Joyner's Silver & Electroplating, Inc.*, 127 N.W.2d 678 (Minn. 1964); *Peters* v. *Bristol Manufacturing Corporation*, 179 A.2d 853 (R.I. 1962).

The "personal comfort" rule referred to in *Candelaria* v. *Industrial Commission*, 85 P.R.R. 18 (1962) is not applicable in this case because the evidence did not show that petitioner, when injured, was outside the establishment during a rest period provided for his personal convenience, as part of his contract of hire and for which he received compensation. At that moment petitioner returned to work after lunch and, as it was said in *Van Roy* v. *Industrial Comm.*, 92 N.W.2d 818 (Wis. 1958), an employee, who is injured in going to or from his place of employment during lunch period, is not entitled to compensation because the injury did not occur during the hours of his employment. In addition to the cases cited in *Candelaria, supra*, with respect to the coverage of the "personal comfort" rule see *Horvath* v. *Industrial Commission*, 131 N.W.2d 876 (Wis. 1965); *Pickrel* v. *Martin Beach, Inc.*, 124 N.W.2d 182 (S.D. 1963); *Whitehurst* v. *Rainbo Baking Company*, 374 P.2d 849 (N.M. 1962).

For the reasons stated, the decision of the Industrial Commission in this case will be affirmed.